Erik Strindberg (Bar No. 4154)
Lauren I. Scholnick (Bar No. 7776)
COHNE, RAPPAPORT & SEGAL, P.C.
525 East First South, Fifth Floor
Salt Lake City, UT 84102
Telephone: (801) 532-2666
Attorneys for Plaintiff



# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| JOHN M. HUNTER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>WHOLE LIVING, INC., a Utah corporation, dba BRAIN GARDEN,<br><br>　　　　Defendant. | **COMPLAINT**<br><br>Civil No. 2:01CV-1031B<br><br>Judge _____ |

Plaintiff, John M. Hunter ("Hunter") by and through his undersigned counsel hereby complains against Defendant, Whole Living, Inc., dba Brain Garden ("Whole Living") as follows:

### NATURE OF CASE

This is a diversity action for breach of both an employment contract and a distributorship agreement, and for a violation of the Utah Wage Payment Act, U.C.A. § 34-28-1 *et seq.* against Whole Living. Plaintiff Hunter seeks damages for breaches of contracts and violation of Utah state law.

### PARTIES

1.　Plaintiff Hunter is an Australian citizen who began working for Whole Living on or about June 23, 2000.

2.      Defendant Whole Living, Inc. is either a Utah or Nevada corporation with its principal place of business in American Fork, Utah County, State of Utah.

## JURISDICTION AND VENUE

3.      Hunter is a citizen of Australia and Whole Living is a citizen of the State of Utah, either because it is a Utah corporation or because its principal place of business is in the State of Utah.

4.      The damages in this case exceed $75,000.00 exclusive of interest and costs.

5.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

6.      Venue is conferred on this Court pursuant to 28 U.S.C. § 1391(a) and (c) inasmuch as the Defendant corporation resides in this jurisdiction.

## GENERAL FACTUAL ALLEGATIONS

7.      Hunter became Managing Director of Whole Living's operations in Australia and New Zealand on or about June 23, 2000. Hunter was employed by While Living at its office in Australia until he was terminated by While Living on October 26, 2001.

8.      Whole Living's business is the manufacture and sale of whole foods, essential oils, and personal care products. Sales are made through a system of distributorships. Hunter was hired to oversee all of the distributorships in Australia and New Zealand.

9.      The terms of Hunter's employment were set forth in agreement dated September 27, 2000 and signed by Hunter on October 1, 2000 (hereinafter referred to as "Employment Agreement"). A copy of that Employment Agreement is attached hereto as Exhibit "A."

10. Under that Employment Agreement, Hunter was to be compensated at the rate of $10,000.00 U.S. per month, and was allowed an additional automobile allowance of $1,000.00 U.S. per month.

11. Hunter was also entitled to commissions of 2% on gross sales in Australia and New Zealand to be paid monthly.

12. In the Employment Agreement Whole Living also agreed to create a stock option incentive program for Hunter for building the Australian/New Zealand market for Whole Living.

13. While Living was also to be responsible for all approved expenses incurred in running Whole Living's business in Australia and New Zealand

14. Over the course of his employment, Hunter performed in an exemplary manner as he significantly built up the Australian and New Zealand market.

15. However, for its part, Whole Living did not deal satisfactorily with the Australia/New Zealand distributors. Whole Living failed to communicate properly with those distributors, did not ship product promptly to fulfill distributor requests, changed the distributors' compensation plan without notice, and was consistently late in providing bonus checks to the distributors.

16. In June, 2001 Whole Living stopped paying Hunter his monthly salary, although he continued to work for Whole Living through October.

17. During the entire time Hunter worked for Whole Living, it never paid any commissions to Hunter, as it was required to do under the terms of the Employment Agreement.

18. Hunter personally paid over $15,000.00 U.S. in expenses on Whole Living's behalf. Although these expenses were properly incurred, Whole Living has refused to reimburse Hunter for these expenses.

19. On or about October 26, 2001, Ron Williams, President of Whole Living, went to Australia and terminated Hunter's employment with Whole Living.

20. On that day, Hunter asked for the approximately five months' of salary he was owed, the one month of vacation pay that he had accrued at a rate of 1.67 days per month, complete reimbursement for expenses he had paid on the company's behalf, his car allowance, and his 2% sales commission.

21. When Whole Living failed to pay these amounts, Hunter, through his attorney, made written demand of Whole Living on November 27, 2001.

22. As of this date, Hunter has not been paid any amounts by Whole Living.

## FIRST CAUSE OF ACTION
### (Breach of Employment Contract – Back Salary, Automobile Allowance, Commissions and Expenses)

23. Plaintiff incorporates paragraphs 1 through 22 as set forth previously.

24. Hunter had a written employment agreement that guaranteed him $10,000.00 per month in salary and $1,000.00 per month in automobile allowance. Additionally, it guaranteed monthly payment of 2% of Australian and New Zealand gross sales, and reimbursement for business expenses.

25. Whole Living failed to pay both salary and automobile allowance beginning in June, 2001, never paid the 2% commissions to Hunter, and has failed to reimburse Hunter for business expenses and his accrued vacation.

26. Whole Living has breached and continues to breach the terms of the Employment Agreement it entered into with Hunter.

27. Due to this breach of Employment Agreement, Hunter is owed his wages, automobile allowance, commissions, and reimbursement for expenses.

28. Hunter is also entitled to compensatory and consequential damages, including but not limited to attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Breach of Employment Contract – Stock Options)

29. Plaintiff incorporates paragraphs 1 through 28 as set forth previously.

30. Under Hunter's Employment Agreement with Whole Living, he was entitled to stock options in Whole Living.

31. Whole Living never provided such stock options, thereby breaching Hunter's employment agreement.

32. As a result of Whole Living's breach of contract, Hunter has been damaged in an amount to be proven at trial. Hunter is also entitled to compensatory and consequential damages, including, but not limited to, attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (Breach of Employment Contract – Front Pay)

33. Plaintiff incorporates paragraphs 1 through 32 as set forth previously.

34. While the duration of Hunter's employment was not in the writing, Hunter was assured by Whole Living that he would be given ample opportunity to establish the Australian and New Zealand market for Whole Living.

35. In order to establish such a market in this industry, Hunter understood that the duration of his employment would be a minimum of three years.

36. Notwithstanding this agreement as to duration, Hunter was terminated after only 17 months of employment.

37. Whole Living's actions constitute a breach of their Employment Agreement.

38. As a result of Whole Living's breach, Hunter has been damaged and is entitled to the benefits of his employment agreement through June 2003. This includes, but is not limited to wages of $10,000.00 per month, a car allowance of $1,000.00 per month, and 2% commission on all sales in Australia and New Zealand.

## FOURTH CAUSE OF ACTION
### (Violation of Utah Wage Payment Act, U.C.A. §34-28-1, et. seq.)

39. Plaintiff incorporates paragraphs 1 through 38 as set forth previously.

40. Pursuant to U.C.A. § 34-28-5, Whole Living was required to pay Hunter his unpaid wages within 24 hours of his termination.

41. Whole Living failed and refused to make such payment.

42. U.C.A. § 34-28-5 imposes a penalty against Whole Living for failure to pay back wages in an amount equal to the wages that would accrue between the date of termination and the date paid.

43. Because the wages were never paid to Hunter, Whole Living owes Hunter the maximum penalty due under the statute, which is 60 days of additional pay. In this case this amounts to $20,000.00 plus commissions.

44. Hunter is also entitled to attorneys' fees for this wage claim under U.C.A. § 34-27-1.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

45. Plaintiff incorporates paragraphs 1 through 44 as set forth previously.

46. Hunter incurred $15,000.00 worth of expenses on behalf of Whole Living.

47. Although Whole Living has received benefit from the expenditures, it has refused to reimburse such expenses, even after demand.

48. Whole Living has been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Hunter prays for the following relief.

1. For back wages, car allowance and commissions due to him until his termination.

2. Stock options in an amount to be proven at trial.

3. Front wages, automobile allowance, commissions and stock options due until June, 2003.

4. Penalty of 60 days wages.

5. Reimbursement for expenses incurred on the company's behalf.

6. Prejudgment interest on the damages above.

7. For costs incurred in bringing this litigation including but not limited to reasonable attorneys' fees and costs.

8. For any and all other relief deemed just and equitable by the Court.

DATED this _____ day of _____, 2001.

COHNE, RAPPAPORT & SEGAL, P.C.

_____
Erik Strindberg
Lauren I. Scholnick
Attorneys for Plaintiff

PLAINTIFF'S ADDRESS:
62 Bollard Circuit
Clear Island Waters
Queensland, Australia 4226

F:\LAUREN\hunter\complaint.wpd

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.